THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Massachusetts Correction Officers Federated Union, Michael Mosher, Zac Gustafson, Denina Dunn, and Angela Pucci,<br><br>  Plaintiffs,<br><br>v.<br><br>Charles D. Baker, in his Official Capacity as Governor of the Commonwealth of Massachusetts, and Carol A. Mici, in her individual capacity as Commissioner of the Massachusetts Department of Correction,<br><br>  Defendants | USDC Case No. _____ |

**COMPLAINT AND REQUEST FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**I.  INTRODUCTION**

1.  The Plaintiffs are a) tenured, career employees of the Massachusetts Department of Correction and b) the union that serves as the Plaintiff employees' exclusive collective bargaining agent.  On or about August 19, 2021, Massachusetts Governor Charles D. Baker issued Executive Order No. 629 ("the Order"), requiring that the individual Plaintiffs, and others, receive the COVID-19 vaccine by October 17, 2021 or else face termination of their employment.  For various reasons, the individual Plaintiffs wish to exercise their constitutional right to decline this medical treatment, but they also wish to keep their employment and continue their careers.  The Plaintiff union opposes the Order insofar as it abrogates important terms of its collective bargaining agreement with the Commonwealth.

Thus, in advance of the Governor's deadline, they seek a declaratory judgment that the Order a) violates their constitutionally-protected right to decline unwanted medical treatment and b) infringes on their constitutionally-significant property interest in their continued employment. Additionally, they and their union seek a declaration that the Order violates the Contracts Clause in Article I, § 10, which prohibits states, including their governors, from passing laws or enacting executive orders that impair the obligations of contracts.

## II.     JURISDICTION AND VENUE

2.     This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331, 1343(3), and 42 USC § 1983.  Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b).

## III.    THE PARTIES

3.     The Plaintiff, Massachusetts Correction Officers Federated Union ("MCOFU") is a membership organization and is the exclusive collective bargaining representative of approximately 4,000 persons employed by the Massachusetts Department of Correction in positions within statewide Bargaining Unit 4.  It is an "employee organization" within the meaning of Massachusetts General Laws Chapter 150E, Section 1, and has a regular place of business in Milford, Massachusetts.  Its purposes include advancing the interests of its members, promoting their welfare, and improving their wages and other conditions of employment.

4.     The Plaintiff, Michael Mosher is employed by the DOC in the position of Correction Officer I, a position he has held continuously since June 1, 2008.  He is a tenured employee within the meaning of M.G.L. c. 31, §1.  He resides in Templeton, Massachusetts.

5. The Plaintiff, Zac Gustafson is employed by the DOC in the position of Correction Officer II, employment he has held continuously since June 2006. He is a tenured employee within the meaning of M.G.L. c. 31, §1. He resides in Oxford, Massachusetts.

6. The Plaintiff, Denina Dunn is employed by the DOC in the position of Correction Officer I, a position she has held continuously since 2001. She is a tenured employee within the meaning of M.G.L. c. 31, §1. She resides in Woonsocket, Rhode Island.

7. The Plaintiff, Angela Pucci is employed by the DOC in the position of Correction Officer I, a position she has held continuously since March 3, 2019. She is a tenured employee within the meaning of M.G.L. c. 31, § 1. She resides in Abington, Massachusetts.

8. The Defendant, Charles D. Baker is the elected Governor of the Commonwealth of Massachusetts and maintains a principal place of business in Boston, Massachusetts. He is sued in his official capacity. The Defendant Carol A. Mici is employed as the Commissioner of the Massachusetts Department of Correction and maintains a principal place of business in Milford, Massachusetts. She is sued in her official capacity.

### IV. ALLEGATIONS OF FACT

9. MCOFU and the Commonwealth of Massachusetts are parties to a collective bargaining agreement ("CBA"), a true and accurate copy of which is attached to this complaint as Attachment 1. While its scheduled end date was June 30, 2021, pursuant to Massachusetts state law, the CBA has by agreement been extended and continued in effect while the parties are in negotiations for a CBA to replace the current one. The CBA exists because of statutory rights and responsibilities assigned the parties by the Massachusetts Legislature via M.G.L. c. 150E, § 6.

10. The CBA regulates the terms and conditions of employment of persons employed by the DOC in various positions within Bargaining Unit 4, including Correction Officer I, II and III, Industrial Instructor I, II and III, and Recreation Officer. See Attachment 1, Appendix B.

11. Among other conditions of employment, covered employees possess and accrue contractual seniority, which serves, among other purposes, to allocate rights and burdens of employment.

12. Once employees covered by the CBA have completed a six or nine month period of probation (the length of which depends on their job title), Article 23 of the CBA guarantees that their employment may not be terminated except for "just cause." This employment security term, existing on account of the aforementioned state statute, c. 150E, § 6, creates a property interest in continued employment for purposes of the due process clause of the United States Constitution.

13. Because of the meaning that has been ascribed to the contract term "just cause" by arbitrators and commentators over the years, the plaintiffs and other non-probationary employees in positions within bargaining unit 4 are assured that before any disciplinary action is taken against them, they will be afforded "industrial due process," which includes, among other things, the right to notice of the charges against them and a fair opportunity to be heard. This term also assures employees that any discipline that is imposed will be corrective in intent and progressive in severity. This contract-based employment security term, existing on account of the aforementioned state statute, c. 150E, § 6, also creates a property interest in continued employment for purposes of the due process clause of the United States Constitution.

14. At Article 32 of their CBA, entitled "Contagious Disease," the Commonwealth and MCOFU comprehensively addressed the entitled subject and have set out their respective rights and responsibilities regarding this topic. There is nothing in that term, nor in any other term of the CBA, that requires employees to receive a vaccine of any kind nor that says that a covered employee's refusal to receive an ordered vaccine shall constitute just cause for termination.

15. The parties have included in the CBA a dispute resolution term that culminates in final and binding arbitration before a disinterested third party. In the context of employee discipline, MCOFU is afforded the right and opportunity to challenge employee discipline that is not based on "just cause," and covered employees can reasonably expect that if the neutral arbitrator determines that an imposed termination was not for "just cause," the arbitrator will have broad remedial powers, including the power to order the DOC to rescind the termination, reinstate the terminated employee, and to make him or her whole for her lost wages and benefits.

16. Because the individual Plaintiffs are also "tenured" employees within the meaning of the state civil service law, M.G.L. c. 31, they are separately assured, under the terms of c. 31, § 41, that their employment may not be terminated unless the DOC has "just cause" to do so, and only after a hearing that meets the due process requirements of that section. Employees who are terminated have the right under c. 31, § 44 to challenge the propriety of their termination at the Massachusetts Civil Service Commission in lieu of submitting the dispute to arbitration under the CBA. Should the Civil Service Commission determine that the discharge was not for "just cause," it has the authority under state law to order the DOC to rescind the discharge, reinstate the employee, and make him or her whole for lost wages and benefits.

17. The employment security bestowed on the Plaintiffs by virtue of c. 31, §§ 41 and 44, creates a property interest in continued employment for purposes of the due process clause of the United States Constitution.

18. The individual Plaintiffs are employed in positions that are treated as within Group 4 for purposes of the state retirement law, M.G.L. c. 32. Group 4 membership generates a higher rate of pension allowance at an earlier age than does membership in other retirement groups. As a result, many people have chosen to work in these positions, notwithstanding the peculiar risks that come with working in the correctional setting, specifically because they can retire as early as 45 with meaningful pension benefits.

19. At the start of the pandemic, the Governor declared a state of emergency and thereafter issued as series of executive orders relating to that declaration, authority for which flowed from the fact of that declaration. One of those orders required closure of many types of businesses. Plaintiffs and their co-workers at the various DOC facilities were, however, denominated as "essential workers" and thus were required to report for work. The Plaintiffs each did so throughout the course of the pandemic and have performed all duties assigned to them. While at work, and in order to mitigate against the spread of the COVID-19 virus, they have, among other things, been required to wear face coverings, abide by social distancing rules, and otherwise self-monitor for symptoms of the virus.

20. Despite the pandemic, the state has operated its correctional system without interruption and without the requirement that DOC employees receive an unwanted vaccine. The DOC has deployed various mitigation measures to reduce the spread of the virus among its employee and inmate complement, such as offering vaccines on an uncoerced, voluntary basis to those staff and inmates that choose to receive them, requiring that all staff wear masks and

maintain social distance, regular and frequent COVID-19 testing (which testing has been conducted under the terms of an agreement reached between the Commonwealth and MCOFU after good-faith negotiations), and enhanced cleaning and sanitizing practices. The DOC has reported that its "strategies minimized opportunities for the virus to enter facilities, identified and treated inmates and staff who contracted the virus, and helped suppress the virus' spread through enhanced cleaning and sanitizing practices." https://www.mass.gov/doc/doc-launches-vaccination-electronic-monitoring-programs-as-health-and-safety-strategies/download

21. Governor Baker ended the State of Emergency on June 15, 2021. All Emergency and Public Health Orders issued pursuant to the emergency terminated on June 15, 2021. See https://www.mass.gov/info-details/covid-19-state-of-emergency.

22. On or about August 19, 2021, Governor Baker issued the Order that is at issue here, purportedly pursuant to his general authority bestowed upon him by Part 2, c.2, § 1, Art. 1 of the Massachusetts Constitution. The Order applies to approximately 42,000 Commonwealth employees, including the individual Plaintiffs and all persons in positions within Bargaining Unit 4, for which MCOFU is the exclusive collective bargaining representative. A true and accurate copy of that Order is attached to the complaint as Attachment 2.

23. To receive the COVID-19 vaccine, as commanded by the Order as a condition to retaining employment, is to receive medication and/or medical treatment.

24. Defendant Mici, as a department head and as the "Appointing Authority" for the Plaintiffs and all covered employees in positions within Bargaining Unit 4, will be compelled under the Order to enforce its terms as to DOC employees.

25.     Because the Order would clearly change one or more terms and conditions of employment of members of Bargaining Unit 4, on or about August 23, 2021, MCOFU, through legal counsel, demanded that the Commonwealth refrain from implementing its terms and to instead bargain in good faith with MCOFU over the decision to require vaccinations and the impacts of such a decision. Refraining from making unilateral changes in working conditions is a general duty imposed on Massachusetts public employers by c. 150E, § 6. A true and accurate copy of that demand to bargain is attached to this Complaint as Attachment 3. On August 24, 2021, the Commonwealth's representative for labor relations purposes responded by email, denying MCOFU's request to rescind the Order until such time as good-faith bargaining was completed. A true and accurate copy of that reply is attached to this Complaint as Attachment 4.

26.     Logically and by likely by design, requiring that the Plaintiffs and other covered employees demonstrate that they have received the COVID-19 vaccine as a condition of continued employment means that they must, in fact, *receive* the vaccine.

27.     The Plaintiffs and many of MCOFU's members spend the vast majority of their work days in the presence of inmates sentenced to the custody of the DOC. The Order does not require that any of those inmates receive the vaccine, and DOC has represented that there are no plans to require inmates to receive the vaccine. They also have families and participate in activities outside of their work that bring them into contact with persons who may transmit the virus to them. The Order does not pertain to any of those potential infectors.

28.     Receipt of the vaccine does not guarantee that one will not become infected with the COVID-19 virus. Fully-vaccinated people are susceptible to what are called "breakthrough infections." Some fully-vaccinated people who have become infected have developed severe symptoms requiring hospitalization, and some have died. Additionally, once infected, even

fully-vaccinated individuals can spread the virus to others with whom they come into contact. Requiring that DOC employees receive the vaccine thus does not guarantee that employees do not get sick and die from the virus, and it does not insure or guarantee that inmates or fellow employees will not become infected through contact with DOC employees.

29. Persons who are unvaccinated but who have already contracted COVID-19 possess antibodies similar in purpose and effect to those that the vaccines are designed to create. They are left with "naturally acquired immunity." Recent studies have shown that naturally-acquired immunity resulting from prior COVID-19 infection provides equal or greater protection against becoming re-infected as the available vaccines, and provides the same protections against developing symptoms of the sort that might require hospitalization or which might cause death as the available vaccines. Some of the persons employed in positions within Bargaining Unit 4 have previously tested positive for the virus that causes COVID-19 and thus possess these naturally-occurring antibodies.

30. Only one COVID-19 vaccine, that manufactured by Pfizer, has been fully authorized for use by the Federal Drug Administration (FDA). The two other vaccines in use in the United States – those manufactured by Moderna and Johnson & Johnson – have received from the FDA only "emergency use approval" ("EUA"). Under the law pertaining to EUA, the FDA can issue the emergency use of a vaccine that has not yet received FDA approval, licensing, or been cleared for commercial distribution due to a potential emergency. However, the EUA further requires that in such a scenario, one of the conditions of the authorization of an unapproved product is to allow the individual to whom the product is administered to be given "the option to accept or refuse administration of the product."

31. In light of the number of people impacted by the Order, the Plaintiffs believe, and therefore allege, that Massachusetts will not have sufficient number of doses of the FDA-approved Pfizer vaccine to administer to all of those affected by the Order and that accordingly some covered employees will be offered only the Moderna or Johnson & Johnson vaccine, those for which the FDA has only granted EUA.

## COUNT ONE: CONTRACT CLAUSE

32. Various terms of the CBA between the Commonwealth and MCOFU have created the reasonable expectation that covered employees could continue in their employment, through to retirement, unless the DOC had just cause to end their employment, and even then, only after they have been afforded "industrial due process."

33. The Order, if implemented, will undermine, and operate as a substantial impairment of, the contractual relationship between MCOFU and the Commonwealth and would substantially impair rights afforded covered employees thereunder. These rights include but are not limited to the right of covered employees to maintain employment security unless and until there was just cause to terminate the employment relationship, the right to industrial due process if the DOC did believe there was just cause to terminate, the right to continue to accrue seniority, the right not to have to receive vaccines as a condition of continued employment, and MCOFU's right to enforce those rights under the grievance/arbitration term of the CBA. These are each important elements of the CBA, and are all serve to establish reasonable expectations of the parties to the CBA and those employees who are covered by it.

34. If implemented, the Order will effectively add to the CBA a term that says "refusal to receive the vaccine shall be considered just cause for termination." That would substantially impair the contractual bargain the negotiating parties have struck as relates to the

topics of employment security, employee discipline, contagious disease, and the role of neutral arbitrators to assess whether there is "just cause" for termination.

35. When this CBA was entered into, there was no Massachusetts law requiring that Commonwealth employees, in order to retain their Commonwealth employment, must accept vaccines that may be ordered from time to time.

36. When this contract was entered into, it was not foreseeable that during the resulting life of the CBA, the Legislature or the Governor would pass a law or issue an order requiring the receipt of a vaccine as a condition of continued employment. Indeed, as of the time of the Order, the parties to the CBA had already regulated the topic of "contagious disease" and had not included in that contract term a requirement that covered employees receive vaccines of any kind.

37. The Order will negate and/or substantially undermine MCOFU's ability under the grievance/arbitration term of the CBA to safeguard the employment security rights of those covered employees who are discharged based on failure to accept the vaccine.

38. The vaccine mandate contained in the Order is not reasonable and necessary to the accomplishment any of the purposes identified in the Order.

39. The vaccine mandate contained in the order is not reasonable in light of the surrounding circumstances. Consider the following facts.

40. Because of the essential nature of the action it requires – the irreversible receipt of a medical treatment – it is not limited to the duration of the public health emergency it purports to serve. Once the medical treatment is received, its impacts on the receiving employees will last beyond the time the Order is in effect and beyond the time that comprises the pandemic that has prompted the Order.

41. The mandate imposes an unreasonable, coercive condition on employees covered by the CBA: they must choose between a) exercising their constitutional right to decline unwanted medical treatment but thereby lose their reasonably-expected employment security, or b) forfeiting their right to decline unwanted medical treatment in order to retain their constitutionally-protected employment security.

42. The vaccine mandate established by the Order is also not tailored appropriately to achieving any of the Order's asserted purposes, as shown by the fact that a) vaccination has proved not to fully prevent the spread of the virus, b) some fully-vaccinated people who have contracted the virus still have had poor medical outcomes, c) avoiding hospitalization and severe disease among DOC employees can be achieved with other mitigation strategies that do not require overriding important contract rights, d) unvaccinated employees can safely perform their DOC duties with other mitigation strategies that do not require overriding important contract rights, e) those employees who have already contracted the virus now possess naturally-occurring immunity, and f) the Commonwealth has no plans to require that inmates, or any other members of the public with whom the covered employees come into contact, also receive the vaccine.

43. Plaintiffs believe, and therefore allege, that prior to issuing the Order, the Governor did not consider alternative approaches to, or policies that would have the effect of, further limiting the spread of the COVID-19 virus associated with DOC employees. Although the Commonwealth and MCOFU engaged in good-faith negotiations in late 2020 that resulted in an agreement related to the subject of employee testing, prior to issuing the Order the Commonwealth's bargaining representatives did not make any proposals, either in the parties'

new contract negotiations or outside of those negotiations, to require that covered employees receive the COVID-19 vaccine as a condition of continued employment.

44. The steps that the Commonwealth and the DOC have taken to date to mitigate the spread of the coronavirus have not proved to be unsuccessful in advancing the goals set out in the Order. The Massachusetts Trial Court has not required that its employees receive the vaccine as a condition of continued employment but has instead adopted a series of alternative steps to achieve the same goals as those set out in the Order. True and accurate copies of its policy requirements are included as Exhibits 5 and 6.

45. The unreasonableness of the impairment caused by the Order is also illustrated by the fact that there are more moderate courses that the Governor could take that would serve equally well the purposes listed in the Order, which would not require impairing the employment security rights extended to covered employees by the CBA. As the CDC has long advocated, robust enforcement of mask mandates and physical distancing rules, regular testing and symptom monitoring with prompt isolation and quarantine requirements for those who test positive, and regular and effective surface cleaning, are effective measures in stemming the spread of the virus that do not require overriding important contract rights.

46. The unreasonableness of the impairment caused by the Order is further illustrated by the fact that the problem that the Order is purportedly intended to resolve was generally in effect when the CBA was last bargained and thus reasonably foreseeable. It has long been known that there was a risk of pandemic associated with new, emerging viruses. Governments around the world had faced viral outbreaks before this contract was entered into. The Commonwealth was aware, when this contract was enacted, of the risk that a virus-caused pandemic could occur and that vaccines might be created to reduce the spread of those viruses or

mitigate their symptoms.  The Commonwealth could have contracted with MCOFU to address this risk but it did not do so.  The change in this foreseeable problem (emerging viruses) in the form of the emergence of this particular virus, i.e., COVID-19, is one of degree, not kind.

### COUNT 2:  SUBSTANTIVE DUE PROCESS:  THE ORDER ARBITRARILY AND IRRATIONALLY INTERFERES WITH PLAINTIFFS' FUNDAMENTAL RIGHT TO DECLINE UNWANTED MEDICAL TREATMENT

47. The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty.  It imposes substantive limitations on the power of government to legislate by "barring certain government actions regardless of the fairness of the procedures used to implement them.'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).

48. Although the Governor is a member of the executive branch of Massachusetts state government, the Order is nonetheless a "legislative" act for purposes of the substantive due process test.  It warrants that designation because it applies broadly to thousands of Commonwealth employees, and it involves policy-making relating to the subject of vaccination.

49. The Fourteenth Amendment forbids the government to infringe at all on fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.

50. Under the substantive due process clause of the Fourteenth Amendment, a competent person has a liberty interest in refusing unwanted medical treatment.  The Plaintiffs each have a fundamental right to bodily integrity that, among other things, permits them to refuse and decline unwanted medical treatment.  This extends even to life-saving medical treatment.  This constitutional right requires that the decision of whether to receive medical treatment be left

up to the individual. This right includes the right to decline medical treatment that is in the form of a vaccine.

51. If implemented, the Order will coercively infringe on the Plaintiffs' fundamental constitutional right to decline unwanted medical treatment, because availing themselves of *that* right will necessarily require them to give up *another* fundamental interest also secured to them by the same substantive due process clause of the Fourteenth Amendment. In the circumstances present here, these plaintiffs have a constitutional right, secured under the substantive due process clause, in keeping their employment absent just cause for that employment to be terminated. The state cannot condition the exercise of one constitutionally-protected right on the forfeiture of another.

52. The Order cannot prevail over the Plaintiff's substantive due process right to decline unwanted medical treatment, because the Order is not narrowly tailored to serve a compelling state interest. Without regard to how long the Order itself remains in effect, the effects of the lone action it compels – receipt of the vaccine – is not time-limited but rather will continue indefinitely. The group affected by the Order is underinclusive, insofar as it does not include the inmates in the DOC's custody, Commonwealth employees in other branches of government, or citizens of Massachusetts. There are also less-restrictive means available to the state to achieve its goal of reducing the spread of the COVID-19 virus. The Governor could instead require that masks be worn, that periodic testing of employees occur, and that those found to have the virus be isolated and quarantined until no longer infectious. Finally, the Order fails to account for the fact that employees who have already contracted COVID-19 now have natural immunity to infection, and protection against the development of serious symptoms if infection does occur, that match, if not exceed, the level of immunity/protection afforded by the mandated vaccine.

### COUNT 3: SUBSTANTIVE DUE PROCESS: THE ORDER ARBITRARILY AND IRRATIONALLY INTERFERES WITH PLAINTIFFS' STATE-CREATED PROPERTY RIGHTS TO CONTINUED EMPLOYMENT

53. The Plaintiffs have a state-created property interest in continued employment, derived from two sources: M.G.L. c. 31, Section 41, and Article 23 of the CBA between the Commonwealth and MCOFU. Both were in effect before the Order was issued. These vest the Plaintiffs with a legitimate entitlement to continued employment absent "just cause" for termination.

54. Neither c. 31, § 41 nor the CBA between the Commonwealth and MCOFU specify that refusal to accept the vaccine qualifies as just cause for termination of employment.

55. In Newman v. Massachusetts, 884 F.2d 19, 24 (1st Cir.1989), the First Circuit recognized there was a substantive due process right to be free from arbitrary and capricious actions affecting one's right to continued public employment.

56. The Order, if implemented, will interfere with the Plaintiffs' existing state-created property interest in continued pubic employment by automatically treating their decision to decline the vaccine as the equivalent of just cause for summary termination of their employment.

57. The Order is arbitrary and irrational because the manner of its infringement on the Plaintiffs' legitimate entitlement to continued employment is not narrowly tailored to serve any compelling state interest. As noted above, without regard to how long the Order itself remains in effect, the effects of the lone action it compels – receipt of the vaccine – is not time-limited but rather will continue indefinitely. The group affected by the Order is underinclusive, insofar as it does not include the inmates in the DOC's custody or Commonwealth employees in other branches of government. There are also less-restrictive means available to the state to achieve the goals identified in the Order. The Governor could instead continue to require that masks be

17

worn, that periodic testing of employees and inmates occur, and that those found to have the virus be isolated and quarantined, and afforded appropriate therapeutic treatments if warranted, until no longer infectious and able to be returned to the workplace.

58.     The Order violates the Plaintiffs' substantive due process rights by arbitrarily and irrationally infringing on their state-created property interest in continued employment.

### COUNT FOUR:  SUBSTANTIVE DUE PROCESS-INFRINGEMENT OF CONSTITUTIONALLY-PROTECTED INTERESTS BY MEANS OF ULTRA VIRES ACT

59.     The Defendant Governor issued the Order after he had terminated his previous declaration of a state of emergency.  The extraordinary order-giving authority that had existed as a consequence of that declaration, see <u>Desrosiers v. Governor</u>, 486 Mass. 369 (2020), had thus lapsed.  The constitutional provision cited in the Order as its source of authority, to wit, "Constitution, part 2, c. 2, §1, Art. 1," does not authorize the extreme actions directed therein.

60.     It is an arbitrary act to exercise authority beyond the Governor's power. Governmental action taken outside the scope of the Defendant's authority, i.e., an "ultra vires" act, is sufficiently arbitrary to amount to a substantive due process violation.

61.     Because the Order is ultra vires, and because it substantially infringes upon the Plaintiffs' a) constitutional right to decline unwanted medical treatment and b) property interest in continued employment absent just cause for termination, it amounts to a substantive due process violation.

**WHEREFORE**, the Plaintiffs respectfully ask that the Court, after a hearing, a) declare that the Order violates the Contract Clause of the United States Constitution, b) declare that the Order unconstitutionally infringes on the Plaintiffs' right to decline unwanted medical treatment without having to forfeit their employment security, and c) declare that the Order

unconstitutionally deprives the Plaintiffs of their protected, state-created property interest in their continued employment, and d) preliminarily and permanently enjoin the Defendants from implementing the Order.

Respectfully submitted,

On behalf of the Plaintiffs, Massachusetts Correction Officers Federated Union, Michael Mosher, Zac Gustafson, Denina Dunn, and Angela Pucci,

By its attorneys:

*/s/ James F. Lamond*
Alan J. McDonald
James F. Lamond
Dennis M. Coyne
McDonald Lamond Canzoneri
352 Turnpike Road, Suite 210
Southborough, MA 01772-1756
(508) 485-6600
amcdonald@masslaborlawyers.com
jlamond@masslaborlawyers.com
dcoyne@masslaborlawyers.com

Date:  September 29, 2021